IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WILLIAM A. REWALT,
individually and on behalf of all
others similarly situated,

           Plaintiff,

v.                                           CIVIL ACTION NO. 3:06-0540

DRAPER & GOLDBERG, PLLC.

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are motions by Defendant Draper & Goldberg, PLLC (D&G) to dismiss and for summary judgment. [Doc. Nos. 59 & 71]. As the Motion to Dismiss is substantively covered by the Motion for Summary Judgment, the Court will address these motions together. Upon review, the Court **GRANTS, in part, DENIES, in part,** and **HOLDS IN ABEYANCE, in part,** D&G's Motion for Summary Judgment and **DENIES AS MOOT, in part, DENIES, in part, and HOLDS IN ABEYANCE, in part,** D&G's Motion to Dismiss.

**I.
FACTS**

On July 5, 2006, Plaintiff William Rewalt, individually and, on behalf of all others similarly situated, filed a Complaint against Branch Banking & Trust Co. (BB&T) and D&G, alleging illegal actions with respect to collection practices on home loans. Over D&G's objection, the Court granted Plaintiff's Motion to Amend his Complaint on September 13, 2007. On October 22, 2007, the Court approved a "Stipulation of Proposed Settlement" between Plaintiff, Plaintiff Class, and Defendant BB&T. D&G was not a party to the settlement. On January 28, 2008, the

Court entered an Order and Judgment stating that the class remains as preliminarily approved by the Order entered on October 22, 2007. The Order and Judgment also approved the settlement as fair, reasonable, and adequate, and it dismissed with prejudice all class and individual claims against BB&T. The Order and Judgment specifically provided that Plaintiff's claims against D&G are not dismissed.

In the Amended Complaint, Plaintiff asserts that he and his wife were paying on a purchase mortgage loan since approximately 1985 to BB&T's predecessor One Valley Bank. *Amended Complaint,* at ¶ 16. After BB&T took over the account, various charges started being added. *Id.*[1] In September of 2005, Plaintiff was notified by BB&T that his mortgage was being referred for foreclosure. *Id.* at ¶ 19. Plaintiff also was informed that all questions should be directed to D&G's offices in Leesburg, Virginia. *Id.* Plaintiff requested a breakdown of the charges and received two letters in October of 2005 from Riverside Trustee Company of Martinsburg, West Virginia, setting forth the charges and directing that payment be sent to D&G's office in Virginia. Plaintiff received an additional letter in October of 2005 on Riverside Trustee Company letterhead, with a return address of Leesburg, Virginia, seeking an accelerated payment. *Id.* at ¶ 23.

After receiving these letters, Plaintiff made a payment at his local BB&T office. *Id.* at ¶ 24. Approximately one week later, Plaintiff received another letter on Riverside Trustee Company letterhead stating that Plaintiff owed additional fees that should be sent to D&G's office

---

[1] Plaintiff states in his deposition that he became behind on his payments in 2005. *Deposition of William A. Rewalt*, at 14.

in Virginia. The letter also set the sale of the property for November 17, 2005. *Id*. at 25. By letter dated November 2, 2005, Plaintiff objected to the fees and charges and explained that he had made a payment to the local BB&T office. Plaintiff also requested an account history. *Id*. at ¶ 26.[2] In or about November of 2005, Defendants returned the check Plaintiff used to make his payment at his local office. *Id*. On or about November 8, 2005, an agent of BB&T telephoned Plaintiff and demanded a payment, which included various costs and fees. *Id*. at ¶ 28. Although Plaintiff disputed the charges, he made the payment to keep his house. *Id*. at ¶ 29.

Plaintiff alleges that D&G acts as BB&T's collection agent and engages in illegal collection practices and charges illegal fees under threats of home foreclosures. *Id.* at ¶¶ 2-6. Plaintiff also asserts that D&G acts as BB&T's foreclosure firm which "operate[s] out of what is, in fact, an empty office in Martinsburg under the name of Riverside Trustee Company. In fact, the documentation is prepared in Virginia, telephone calls are received in Virginia, and much of the documentation is mailed from the Leesburg, Virginia office of Draper & Goldberg." *Id*. at ¶ 7, in part.

Plaintiff's claims against BB&T and D&G are divided into two categories in the Amended Complaint. "Part A" is entitled "Class Claims" and encompasses Counts I through IV. These claims are: (1) Count I - Breach of Duty of Good Faith and Fair Dealing; (2) Count II - Unauthorized Charges; (3) Count III - Illegal Debt Collection; and (4) Count IV - Joint Venture and

---

[2]Copies of all the letters are attached to Plaintiff's deposition which is attached as an exhibit to D&G's brief in support of its Motion for Summary Judgment.

Agency. "Part B" is entitled "Individual Claims" and includes Counts V through X. These claim are: (1) Count V - Illegal Pursuit of Forfeiture; (2) Count VI - Refusal to Provide Account; (3) Count VII - Illegal Attorneys Fees; (4) Count VIII - Illegal Fees; (5) Count IX - Failed to Account for Default Fees Separately; and (6) Count X - Failure to Make Clear Disclosure in Debt Collection. In its motions, D&G argues that all claims against it must be dismissed and/or it should be granted summary judgment.

## II.
## STANDARD OF REVIEW

Upon review of the claims, the Court finds that D&G's Motion for Summary Judgment encompasses, or otherwise resolves, the issues raised in its Motion to Dismiss. Therefore, the Court will apply the summary judgment standard. To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a

showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III.
## DISCUSSION

In its Motion for Summary Judgment and its Reply to Plaintiff's Response to its Motion to Dismiss, D&G argues that Plaintiff's "Part A: Class Claims" (Counts I - IV) were covered by the settlement agreement reached between Plaintiff, Plaintiff Class, and BB&T. In his Response to Summary Judgment, Plaintiff asserts that he learned through discovery that D&G was responsible for all the illegal collection practices and illegal charges added to his account, with one exception involving inspection fees. Therefore, Plaintiff amended his original Complaint to clearly attribute responsibility in Parts A and B of the Complaint. Plaintiff admits his settlement with BB&T over the inspection fees issue resolves Part A of the Amended Complaint. Plaintiff further states he no longer needs to pursue his claim for Illegal Pursuit of Forfeiture contained in Count V of Part B of the Amended Complaint. Therefore, as there is no issue with respect to Counts I through V, the Court **GRANTS** D&G's Motion for Summary Judgment of those claims and **DENIES AS MOOT** its Motion to Dismiss them.

D&G also asserts it is entitled to dismissal and/or summary judgment on the remainder of Plaintiff's individual claims against it, Counts VI through X. D&G argues the language of the settlement agreement reached between Plaintiff and BB&T releases it from all liability. Specifically, D&G points to paragraph 13 of the settlement agreement which provides, in part:

> When the Final Approval Order has been entered, the named plaintiff . . . shall be barred from suing BB&T and any of its successors, assigns, affiliates, officers, shareholders, directors, agents and employees arising out of the claims and conduct alleged in Part A of the Complaint, including claims for damages (including punitive damages, attorneys' fees and costs, and penalties).

*Stipulation of Proposed Settlement*, at ¶ 13. D&G asserts this paragraph bars Plaintiff from pursuing his action against it because he alleges in Counts VI through X that D&G acted as BB&T's agent. However, the very first numbered paragraph of the agreement states, in part:

> Plaintiffs have asserted class claims against BB&T as the originator and servicer of the class members' loans, all of which were more fully set forth in Part A, Counts I, II, III and IV of the Amended Complaint . . . . *The individual claims of the named plaintiff against the Defendant Draper & Goldberg are not resolved by this agreement (Part B of the Complaint).* The named Plaintiff has no individual claims against BB&T.

*Id.* at ¶ 1(a), in part (emphasis added). D&G acknowledges paragraph 1, but asserts the only reasonable interpretation of the settlement is that it releases D&G from any liability it may have in its capacity as an agent of BB&T, and preserves claims for acts and omissions committed outside of that relationship. As there are no allegations that D&G acted outside that relationship and all the claims arise out of Plaintiff's loan with BB&T, D&G contends that it is entitled to summary judgment. The Court disagrees.

Paragraph 13 expressly provides that Plaintiff "shall be barred from suing BB&T and . . . its . . . agents . . . arising out of the claims and conduct alleged *in Part A of the Complaint*." *Id.* at ¶ 13, in part (emphasis added). As previously noted, Plaintiff agrees that the Part A claims are

-6-

resolved and this Court granted D&G's Motion for Summary Judgment on those claims. However, the Court finds paragraph 13 does not bar suit against D&G with respect to the individual claims in Part B. This conclusion is completely consistent with the clear language of paragraph 1(a) which states *"[t]he individual claims of the named plaintiff against the Defendant Draper & Goldberg are not resolved by this agreement (Part B of the Complaint)." Id*. at ¶1(a), in part (emphasis added). The general rule under West Virginia law "is that a compromise or settlement agreement is favored by law and is to be construed as any other contract." *Floyd v. Watson*, 254 S.E.2d 687, 690 (W. Va. 1979) (citations omitted).[3] "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 128 S.E.2d 626 (W. Va. 1962). Contrary to D&G's position, the Court finds no ambiguity between paragraphs 1(a) and 13.[4] The language of the agreement clearly settled the Part A claims, but it did not resolve the Part B claims against D&G. Therefore, the Court **DENIES** D&G's Motions to Dismiss and for Summary Judgment on this ground.[5]

---

[3] Paragraph 17 of the Settlement Agreement provides that it is governed and controlled by West Virginia law.

[4] "Contract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. Pt. 6, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 569 S.E.2d 796 (W. Va. 2002). "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. Pt. 1, *Berkeley County Pub. Serv. Dist. v. Vitro Corp. of America*, 162 S.E.2d 189 (W. Va. 1968).

[5] Even if the Court were to assume *arguendo* that an ambiguity exist, the Court finds the clear intent of the parties from the language written in the Settlement Agreement is that it does not prevent Plaintiff from pursuing his individual claims against D&G in Part B. *See Energy Development Corp.*
(continued...)

Next, D&G argues that judgment should be entered in its favor on Count VI "Refusal to Provide Account." In Count VI, Plaintiff alleges that D&G "refused to provide a statement of account containing all of the charges it was adding to the plaintiff's account, with the requisite details thereof in violation of *W.Va. Code* § 46A-2-114(2)." *Amended Complaint*, at ¶ 53. This section provides:

> Upon written request of a consumer, the person to whom an obligation is owed pursuant to a consumer credit sale, consumer lease or consumer loan, other than one pursuant to a revolving charge account or revolving loan account, shall provide a written statement of the dates and amounts of payments made within the past twelve months and the total amount unpaid. The requested statement shall be provided without charge once during each year of the term of the sale, lease or loan. If additional statements are requested the creditor may charge not in excess of three dollars for each additional statement.

W. Va. Code § 46A-2-114(2). D&G asserts that this statute does not apply to it because it is not a "person to whom an obligation is owed[.]" Plaintiff cites no case law but responds by stating that BB&T made D&G a creditor for purposes of this statute because D&G was designated to service the loan and all payments were directed to be made through D&G. However, merely because an entity services a loan and accepts payments on behalf of another, it does not necessarily mean that the servicing entity is "the person to whom an obligation is owed[.]" Thus, the Court finds Plaintiff's argument and evidence that D&G qualifies as "the person to whom an obligation is owed" is

---

[5](...continued)
*v. Moss*, 591 S.E.2d 135, 144 (W. Va. 2003) (stating "a court must embark upon a search for the intent of the parties" if an ambiguity is found).

insufficient and **GRANTS** summary judgment in favor D&G on Count VI and **DENIES AS MOOT** its Motion to Dismiss this claim.

D&G also argues that Counts VII through X must be dismissed and/or it should be granted summary judgment because they are based upon violations of West Virginia Code §§ 46A-2-124, and 127-128, which apply to debt collectors.[6] D&G states that it cannot be held liable under any of these statutes because it only acted as counsel for BB&T and it did not act as a debt collector. "Debt collection" and a "debt collector" are defined in The West Virginia Consumer Credit and Protection Act (WVCCPA) as:

> (c) "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer.
>
> (d) "Debt collector" means any person or organization engaging directly or indirectly in debt collection. The term includes any person or organization who sells or offers to sell forms which are, or are represented to be, a collection system, device or scheme, and are intended or calculated to be used to collect claims.

W. Va. Code § 46A-2-122(c) and (d). In *Thomas v. Firestone Tire and Rubber Co.*, 266 S.E.2d 905 (W. Va. 1980), the West Virginia Supreme Court considered these definitions and determined the

---

[6]Section 124 provides that "[n]o debt collector shall collect or attempt to collect any money alleged to be due and owing by means of any threat, coercion or attempt to coerce." W. Va. Code § 46A-2-124, in part. Section 127 states that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." W. Va. Code § 46A-2-127, in part. Section 128 provides that "[n]o debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code § 46A-2-128, in part.

phrase "debt collector" includes "*any* person or organization" engaged in debt collection practices. 266 S.E.2d at 908 (emphasis added). As explained by the court, the purpose of the statute is "to protect consumers against unscrupulous collection practices, by whomever perpetrated. In light of the broad remedial purposes of this legislative act, all who engage in debt collection are alike subject to its prohibitions." *Id*. at 909. Thus, even if D&G acted as counsel for BB&T on certain matters, it is not shielded from liability if it also acted as a debt collector. *Compare with Wilson v. Draper & Goldberg*, 443 F.3d 373 (4th Cir. 2006) (reversing summary judgment in favor of D&G and finding that D&G could be liable as a "debt collector" under the Fair Debt Collection Practices Act (FDCPA)); *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (finding the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation").

D&G insists, however, that there is no evidence it took any action in its own capacity against Plaintiff, such as sending a demand letter or filing suit. In addition, D&G asserts that the letters sent to Plaintiff were from Riverside Trustee Company and there is insufficient evidence to show that Riverside Trustee Company is the alter ego or instrumentality of D&G. As previously defined, a "debt collector" under the WVCCPA includes any organization which engages "directly or indirectly in debt collection." Thus, under the WVCCPA, an organization is deemed a "debt collector" even if its involvement in the debt collection is only indirect. Although the letters here were sent under the letterhead of Riverside Trustee Company of Martinsburg, West Virginia, they directed payments be sent to D&G in Leesburg, Virginia. In addition, Plaintiff asserts in his Amended Complaint that the documentation is prepared in Virginia, telephone calls are received in

Virginia, and many of the documents are mailed from D&G's offices in Virginia. Upon consideration of these facts, the Court finds that the issue of whether or not D&G acted as a "debt collector" is best resolved by a jury. Therefore, the Court **DENIES** its motions to dismiss and/or for summary judgment on Counts VII through X.

Similarly, the Court finds Plaintiff has set forth sufficient evidence to survive summary judgment on the issue of whether Riverside Trustee Company is the alter ego or instrumentality of D&G. Plaintiff argues that D&G acted as a trustee by virtue of its relationship with the Riverside Trustee Company. Under West Virginia law, a trustee has a duty to act impartially between the parties to foreclosures, and corporations serving as trustees must have their principal office in West Virginia. *See Lucas v. Fairbanks Capital Corp.,* 618 S.E.2d 488, 493-94 (W. Va. 2005) (discussing the duties of a trustee and holding in Syllabus Point 1 that "[t]he trustee in a trust deed given as security in connection with a home mortgage loan owes a fiduciary duty to the signatories of the trust deed"); W. Va. Code § 38-1A-2.[7]

Plaintiff asserts the evidence will demonstrate that the bifurcation of trustee and collection duties between Riverside Trustee Corporation and D&G is a sham, and it has resulted in abuses and illegal collection practices. In support, Plaintiff attached to his Response information obtained from the West Virginia Secretary of State's Office showing that the officers of Riverside

---

[7]This section provides, in part: "No corporation may be named or act as the trustee or as one of the trustees of a security trust unless it is chartered under the laws of this State or of the United States of America, and unless its principal office is within this State." W. Va. Code § 38-1A-2, in part.

-11-

Trustee Corporation are David Draper, Jr. and Darren Goldberg, with the same address as Draper and Goldberg in Leesburg, Virginia. The Secretary of State's Office also lists the principal office address, local office address, mailing address, and notice of process address for Riverside Trustee Corporation as the same Leesburg, Virginia address. In addition to the letters he received and his own version of events of dealing with D&G and Riverside Trustee Corporation, Plaintiff also attached an affidavit of Audrey Ross who states, inter alia, that she visited the office of Riverside Trustee Company during regular working hours and "found it was a small office labeled "CLOSED" with no visible signs of regular activity." *Affidavit of Audrey Ross*, at ¶ 12. She further states that she received a Notice of Sale of her house from D&G on stationary from Riverside Trustee Corporation forwarded from Leesburg, Virginia and, when she telephoned the Martinsburg office, her call was answered by D&G in Leesburg, Virginia. *Id*. at ¶¶ 4-5. In its Reply, D&G asserts there is insufficient evidence to show that Riverside Trustee Corporation is the alter ego or instrumentality of D&G. However, the Court disagrees and finds that Plaintiff has set forth sufficient evidence to survive summary judgment on this issue.[8]

---

[8]The West Virginia Supreme Court explained in *Southern Elec. Supply Co. v. Raleigh County Nat. Bank.,* 320 S.E.2d 515 (W. Va. 1984), that

> [j]ustice may require that courts look beyond the bare legal relationship of the parties to prevent the corporate form from being used to perpetrate injustice, defeat public convenience or justify wrong. However, the corporate form will never be disregarded lightly. The mere showing that one corporation is owned by another or that they share common officers is not a sufficient justification for a court to disregard their separate corporate structure. Nor is mutuality of interest, without the countermingling of funds or property interests, or

(continued...)

In Counts VII through X, Plaintiff also alleges violations of West Virginia Code § 46A-2-115. D&G asserts that this statute places a limitation on default charges that may be set forth in a loan or credit agreement and declares any provision in violation of the statute unenforceable. It does not regulate debt collectors or collection activities. Thus, D&G argues that it is totally inapplicable to it, even if the Court were to consider it a debt collector. The Court finds that Plaintiff has not adequately responded to this argument. Therefore, the Court **HOLDS IN ABEYANCE** D&G's Motion to Dismiss and Motion for Summary Judgment based upon this statute

---

[8](...continued)
>  prejudice to creditors, sufficient. Rather it must be shown that the corporation is so organized and controlled as to be a mere adjunct or instrumentality of the other.
>
> \*   \*   \*
>
> Decisions to "pierce" involve multifarious considerations, including . . . . *total* control and dominance of one corporation by another . . .; existence of a dummy corporation with no business activity or purpose; violation of law or public policy; a unity of interest and ownership that causes one party or entity to be indistinguishable from another; common shareholders, common officers and employees, and common facilities. This evidence must be analyzed in conjunction with evidence that a corporation attempted to use its corporate structure to perpetrate a fraud or do grave injustice on an innocent third party seeking to pierce the veil.
>
> The law presumes that two separately incorporated businesses are separate entities and that corporations are separate from their shareholders.

320 S.E.2d at 522-23 (internal quotation marks, citations, and footnote omitted; emphasis original).

and **DIRECTS** Plaintiff to respond to D&G's argument or before **Friday, June 27, 2008.** D&G shall have until **Wednesday, July 1, 2008**, to file its Reply.

## IV.
## CONCLUSION

For the foregoing reasons, the Court **GRANTS** D&G's Motion for Summary Judgment with respect to Counts I through VI, and **DENIES AS MOOT** the respective Motion to Dismiss. The Court **DENIES** D&G's Motion for Summary Judgment and Motion to Dismiss Counts VII through X. However, with respect to Plaintiff's claim pursuant to West Virginia Code § 46A-2-115 contained in Counts VII through X, the Court **HOLDS** the motions **IN ABEYANCE** until after additional briefing of the issue is complete.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: June 24, 2008

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE